No. 13-912C
(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

JPR, INC. d/b/a
SILVERADO RANCH ESTATES

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

PLAINTIFF'S OPPOSITION TO DEFEDANT'S MOTION TO DISMISS

---

JUSTIN G. REDEN
REDEN & REDEN, APC
16885 VIA DEL CAMPO COURT
SUITE 320
SAN DIEGO, CA 92127
Attorney for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………………………...ii

STATEMENT OF THE CASE…………………………………………………………………1

FACTUAL BACKGROUND………………………………………………………………….2

ARGUMENT

    I.    JPR'sClaims Were Brought Within the Statute of Limitations and Therefore the Claims Fall Within This Court's Jurisdiction……………………………………………………..6

    A.  Standard of Review for a RCFC 12(b)(1) Motion to Dismiss………………………...6

    B.  JPR Can Demonstrate, By a Preponderance of the Evidence, That Its Claims Are Not Time Barred……………………………………………………………………..8

        i.  The Intentional Circumvention of Sales…………………………………..8

        ii.  USFWS Failure to Recognize JPR's Bank Status or Revocation of JPR's Bank Status…………………………………………………………10

        iii.  JPR's Inverse Condemnation Claims…………………………………12

    II.    JPR's Complaint Successfully States a Claim Upon Which Relief May Be Granted…...13

    A.  JPR Successfully Alleges Facts to Raise a Reasonable Expectation that Discovery will Produce Evidence to Support a Breach of Contract………………………...13

        i.  JPR Sufficiently Pled Cognizable Breach of Contract Claims…………..14

    B.  JPR's Inverse Condemnation Must Survive the Motion to Dismiss…………….17

    III.    JPR is Barred from Joining the CDFW as a Party to This Action………………………20

CONCLUSION…………………………………………………………………………..22

# TABLE OF AUTHORITIES

## CASES

*Atkiebolaget Bofors v. United States*,
    139 Ct. Cl. 642 (1957) ................................................................................................... 10

*Awad v. United States*,
    301 F.3d 1367, 1372 (2002) .......................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ............................................................................................... 13

*Bell/Heery v. United States*,
    739 F.3d 1324, 1330 (Fed. Cir 2014) ........................................................................... 13

*Blanchard v. St. Paul Fire and Marine Ins. Co.*,
    341 F.2d 251 (5th Cir. 1965) ........................................................................................ 14

*Brown Park Estates-Fairfield Dev. Co. v. United States*,
    127 F.3d 1449, 1458 (Fed. Cir. 1997) ............................................................................ 9

*Gregory Lumber Co. v. United States*,
    9 Cl. Ct. 503, 526 (1986) .............................................................................................. 15

*Hess v. Port Authority Trans-Hudson Corp.*,
    513 U.S. 30, 48 (1994) ................................................................................................... 21

*Joseph W. Morris v. United States*,
    961 F.2d 195, 198 (Fed. Cir. 1992) .............................................................................. 15

*Kenney Orthopedic, LLC v. United States*,
    103 Fed. Cl. 455, 462 (Fed. Cl. 2012) ......................................................................... 15

*Martinez v. United States*,
    48 Fed. Cl. 851, 857 (2001) ............................................................................................ 7

*Mehaffy v. United States*,
    102 Fed. Cl. 755, 762 (2012) ........................................................................................ 19

*Mitchell v. United States*,
    10 Ct. Cl. 787, 788-89 (Cl. Ct. 1986)............................................................................9

*Patton v. United States*,
    64 Fed. Cl. 768, 773 (2005). ....................................................................................7

*Regents of the Univ. of California v. Doe*,
    519 U.S. 425, 428 (1997)..........................................................................................21

*Reynolds v. Army & Air Force Exch. Serv.*,
    842 F.2d 746, 747 (Fed. Cir. 1988)............................................................................7

*San Carlos Irr. & Drainage Dist. v. United States*,
    877 F.2d 957, 959 (Fed. Cir. 1989)..........................................................................13

*Sommers Oil Co. v. United States*,
    241 F.3d 1375, 1378 (Fed. Cir. 2001)......................................................................13

*St. Christopher Assocs., L.P. v. United States*,
    511 F.3d 1376, 1385 (Fed. Cir. 2008)......................................................................18

*Stockton East Water District v. United States*,
    583 F.3d 1344, 1368 (Fed. Cir. 2009)......................................................................18

*Summit Contractors, Inc. v. United States*,
    22 Cl. Ct. 54, 56 (1990) ...........................................................................................15

*Sun Oil Co. v. United States*,
    215 Ct. Cl. 716 (1978) ..............................................................................................18

*Wood v. United States*,
    961 F.2d 195, 198 (Fed. Cir. 1992)..........................................................................14

*Woodbury v. United States*,

    313 F.2d 291, 295 (9th Cir. 1963) ...........................................................................14

## CONSTITUTIONS

*U.S. Const. amend. XI* …………………………………………………………………………..21

**STATUTES**

28 U.S.C. § 2501…………………………………………………………………………………9

**REGULATIONS**

66 FR 9476, 9483 (2001)………………………………………………………………………....11

67 FR 18356, 18365 (2002)…………………………………………………………………….....11

75 FR 51204, 51214 (2010)…………………………………………………………………….....10

79 FR 48547, 48574-75 (2014)……………………………………………………………………10

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JPR, INC., a California corporation doing business as SILVERADO RANCH ESTATES,<br><br>        Plaintiff,<br><br>vs.<br><br>THE UNITED STATES,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S RESPONSE TO USA'S MOTION TO DISMISS; REQUEST FOR LEAVE TO AMEND IN THE ALTERNATIVE TO DENIAL

**No. 13-912C**
**(Judge Lettow)**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS; REQUEST FOR LEAVE TO AMEND IN THE ALTERNATIVE

First, this Court has subject matter jurisdiction to hear JPR, Inc.'s ("JPR") claims because JPR's claims were brought within six years of accrual of the causes of action. Second, JPR states a claim upon which relief may be granted.  Furthermore, a stay is not necessary as the California case involves separate and distinct issues and is nearing trial and any duplicate issues will be settled prior to this case being ready for trial. Discovery should be allowed to progress as little of the Court's resources will be expended.

In the alternative to granting the Defendant's motion to dismiss, JPR respectfully requests the opportunity to amend the complaint pursuant to RCFC 15 to cure any deficiencies in factual allegations as determined by the Court.

## STATEMENT OF THE CASE

The dispute arises out of a Conservation Banking Agreement between JPR, a private landowner, and the United States Fish and Wildlife Service ("USFWS") and the California Department of Fish and Wildlife (formerly Fish and Game) ("CDFW") (collectively "Wildlife Agencies"). JPR's allegations are summarized as:

- 1 -

(1) The USFWS induced JPR to record a conservation easement over its land and the inducements were memorialized in the Conservation Banking Agreement ("Agreement"). Compl. ¶¶14-17, 42i, 44-45;

(2) The USFWS intentionally circumvented sales from JPR's mitigation bank in violation of the Agreement. Compl. ¶¶14-17, 42i, 46;

(3) The USFWS revoked and/or failed to recognize JPR's status as an authorized mitigation bank in violation of the Agreement. Compl. ¶¶18-19, 42i, 47, 49; and

(4) The USFWS inversely condemned JPR's land by effectively rendering it nearly valueless through recording of the conservation easement. Compl. ¶¶7-8, 53-62.

JPR originally filed suit against the Wildlife Agencies, the County of Riverside and the United States in this action in the United States District Court, Central District of California. The California entities objected to being included in a complaint filed in Federal court. The United States moved to dismiss or transfer the action to this Court. The District Court dismissed all parties and transferred this action to this Court retaining only the United States as a defendant. JPR was then forced to bring suit against the County of Riverside and the CDFW in California state court.

## FACTUAL BACKGROUND

JPR originally purchased 1,955 acres of property in the Community of Anza, County of Riverside, California between 1987 and 1989. Compl. ¶7. JPR planned to subdivide, develop and sell the property.  It prepared and recorded tentative tract maps, graded roads and building pads and installed miles of underground utilities.  [Declaration of Gregory S. Reden, ¶2].

In late 1998, JPR was approached by the USFWS and the California Department of Fish and Wildlife about conserving its property in exchange for the ability to sell mitigation credits. Compl. ¶8; [Declaration of Gregory S. Reden, ¶3.  Two endangered species were discovered on

Plaintiff's property - the Stephens Kangaroo Rat ("SKR") and the Quino Checkerspot Butterfly ("QCB"). Compl. ¶¶8-9.  As the SKR was a valuable species for conservation under the state Endangered Species Act and both the SKR and QCB were valuable for conservation under the federal Endangered Species Act ("ESA"), the Wildlife Agencies sought to protect and preserve Plaintiff's property.  [Declaration of Gregory S. Reden, ¶4].

<u>The Conservation Easement and Conservation Banking Agreement</u>

USFWS impressed upon JPR that the creating of the Silverado Ranch Conservation Bank (which included the recordation of a conservation easement on the bank lands as a condition of establishment of the bank), and the protection of the SKR and QCB would be a profitable method of compensation for the loss of use of JPR's land.   [Declaration of Gregory S. Reden, ¶5].

In 1998 and 1999 USFWS and JPR negotiated and agreed upon the terms of the Conservation Bank Agreement ("Agreement") which culminated in the signing and recordation of the conservation easement on April 2, 1999 ("conservation easement").  The conservation easement primarily covered 7 separate parcels of land with an area of approximately 746 acres and it further created restrictive covenants on all of Plaintiff's land identified in **Exhibit A** to the conservation easement which included Phases I, II, and III of Plaintiff's conservation bank. Compl. ¶8; [Declaration of Gregory S. Reden, ¶6, **Exhibit A**].

From 1998 recordation in April of 1999 to June 2002, the Wildlife Agencies presented five versions of the Conservation Banking Agreement ("Agreement") to establish JPR's mitigation bank – named Silverado Ranch Mitigation Bank ("Silverado"). Compl. ¶11. The representations made to JPR by the Wildlife Agencies are found within the recorded conservation easement and Agreement which is incorporated by reference in the conservation easement. Compl. ¶10; [Declaration of Gregory S. Reden, ¶¶7-8, **Exhibit A**].  Among them, are

promises to confirm Silverado's mitigation credits are for sale to perspective purchasers, confirm that the Agreement is valid and in force, and place Silverado on any lists of mitigation banks for the purposes of attracting credit purchasers. Compl. ¶14; [Declaration of Gregory S. Reden, ¶9, **Exhibit A**].Even though the Agreement had been reached in April 1999 at the time the conservation easement was signed and recorded, in October 2002 USFWS asked JPR to execute and deliver to the USFWS the existing written document that memorialized the terms of the parties Agreement that was struck in April of 1999. Compl. ¶12; [Declaration of Gregory S. Reden, ¶10].

The MSHCP

Throughout this process, the MSHCP was being negotiated and drafted by the Wildlife Agencies and federal, state and local governments.  Initially, JPR and other private mitigation banks were told that their remaining credits would be purchased by the RCA at the time the MSHCP was adopted.  Indeed, the relevant draft MSHCP language stated this.  [Declaration of Gregory S. Reden, ¶11, **Exhibit B**]. However, as the final draft of the MSHCP neared, it became apparent to JPR and a number of other land owners convinced to become mitigation banks that the terms of the MSHCP would not call for the buy-out of the banks but instead, provide an In Lieu Fee Program wherein the banks could sell their remaining credits to developers in lieu of the developers paying a developer fee to the County pursuant to the MSHCP.  [Declaration of Gregory S. Reden, ¶12, **Exhibit C**].

The MSHCP In Lieu Fee Program became a new obstacle for Plaintiff and other private mitigation banks that was not contemplated by the parties original agreements conservation easement or the Agreement because now, developers could not purchase credits directly from Plaintiff – it was mandatory for them to pay a developer fee to the County to satisfy their state and federal mitigation requirements.  Essentially, Plaintiff was at the mercy of the Wildlife

Agencies and the RCA as to whether they would allow them to sell their credits to developers in the In Lieu Fee Program.  From its implementation in 2003 to 2012, JPR negotiated with the Riverside authorities to set up Silverado's credits for the "in-lieu fee program".  The cause for delay was haggling over the details of agreements and erection of additional obstacles by the Wildlife Agencies to being granted access to the program.  Never before 2012 did the Wildlife Agencies, County, or RCA deny Plaintiff's status as a valid mitigation bank.  In 2012 Plaintiff requested clarification of its status vis a vis the government tort claim notices referenced in the Complaint and all claims were denied.  [Declaration of Gregory S. Reden, ¶¶13-14].

<u>Circumvented Sales</u>

In 2002, JPR became aware of USFWS directing credit purchasers away from Silverado by informing credit purchasers that Silverado credits were not available for them to purchase. [Declaration of Gregory S. Reden, ¶15]. Through other banks and developers, JPR learned of the USFWS informing potential credit purchasers that Silverado credits were unavailable. [Declaration of Gregory S. Reden, ¶16].  JPR requested clarification from the USFWS. The USFWS response was an explanation that those credit purchasers were sent away from JPR's Silverado not because Silverado's credits were not valid but rather mitigation was required at other sites because of "biological reasons" as cited in the applicable biological opinions and consistency reports.  [Declaration of Gregory S. Reden, ¶17].  At the time this explanation appeared reasonable, JPR knew that a number of banks had differing kinds of credits and habitat and with the overall volume of credit sales occurring, that there would be other purchasers for Silverado's credits. Compl. ¶16. It was only after the USFWS confiscated an additional 210 credits from JPR, did JPR become suspicious of the USFWS intentions (or lack thereof) to uphold the Agreement.  [Declaration of Gregory S. Reden, ¶¶18-19].

<u>Confiscated Credits</u>

JPR sold property to the County of Riverside in 2003. Much of the 2003 purchase included lands out of phase III of Silverado. However, a small portion of phase I of Silverado was also included in the 2003 purchase.  [Declaration of Gregory S. Reden, ¶20].   Prior to the County's purchase, JPR represented to the County 217 mitigation credits had been sold out of that property, thus lowering the value to JPR. I met with County representatives and told them this and also sent them a letter to this effect.  [Declaration of Gregory S. Reden, ¶21, **Exhibit D**]. The County acknowledged this in writing.  .  [Declaration of Gregory S. Reden, ¶21**, Exhibit E**]. The applicable purchase agreement did not specify a specific number of credits transferring to the County but instead simply stated Plaintiff would "[a]ssign any and all currently retained Conservation Bank Credits . . .." [Declaration of Gregory S. Reden, ¶22, **Exhibit F**].

In 2004, the Western Riverside County Regional Conservation Authority ("RCA") was created to administer the oversight of the MSHCP. [Declaration of Gregory S. Reden, ¶23].

The RCA approached JPR to purchase in 2005 and 2006. The sale of additional land was eventually consummated in 2006. During this time, negotiations were near finalization to allow JPR to enter the "in-lieu fee program".   Everything seemed to be on track.  [Declaration of Gregory S. Reden, ¶24].  However, a dispute arose in 2008 over the phase I land purchase from 2003. For the first time, the RCA, County, and USFWS expressed a belief that 210 credits had been transferred to the County in the purchase.  JPR disagreed and produced written evidence supporting its position that the credits had been previously sold and as such, were not available to transfer to the County at the time of the 2003 land purchase.  [Declaration of Gregory S. Reden, ¶25].  In 2008, the USFWS entered the fray on its own volition to solve the credit issue. The USFWS ignored JPR's evidence and sided with the County and the RCA.  By letter, the USFWS "determined" that the 210 credits must have passed to the County.  [Declaration of Gregory S. Reden, ¶26, **Exhibit G**].

<u>Government Claims</u>

In 2012, JPR received a letter from the USFWS confirming that JPR's Silverado was, in fact, a bona fide mitigation bank and that Silverado could participate in the in-lieu fee program. [Declaration of Gregory S. Reden, ¶27, **Exhibit H**]. However, in 2012, when JPR requested clarification of their status from all the Wildlife Agencies, the USFWS reversed course and refused to recognize Silverado as an approved bank.  [Declaration of Gregory S. Reden].

In April, 1999 JPR made two credit sales (Norco – 148 credits; Centex – 40 credits).  As a condition of those sales, JPR was required to record the conservation easement and USFWS gave written notification that the bank was formally established and that the conservation bank agreement was signed by USFWS.  [Declaration of Gregory S. Reden, ¶26, **Exhibit I**].

## **ARGUMENT**

### I.  **JPR'sClaims Were Brought Within the Statute of Limitations and Therefore the Claims Fall Within This Court's Jurisdiction**

#### A.  **Standard of Review for a RCFC 12(b)(1) Motion to Dismiss**

When jurisdiction is challenged, the inquiry is not whether a plaintiff will ultimately prevail, but whether this court has jurisdiction to hear the matter in the first instance. *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005). In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court presumes all undisputed factual allegations to be true and construes all reasonable inferences in favor of the plaintiff. *Reynolds v. Army & Air Force Exch. Serv.*, 842 F.2d 746, 747 (Fed. Cir. 1988) (emphasis added).

Additionally, the court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001). "Indeed, the court may, and often must, find facts on its own." *Id.* The plaintiff  need only show

a preponderance of the evidence to establish subject matter jurisdiction. *Reynolds*, 846 F.2d at

748.

### B. JPR Can Demonstrate, By a Preponderance of the Evidence, That Its Claims Are *Not* Time Barred

JPR is not seeking to recover on claims beyond the six year statute of limitations. JPR's

complaint meets the jurisdictional threshold required under the Government's waiver of

sovereign immunity – claims must be brought within six years in which the claim has accrued.

28 U.S.C. § 2501. A complaint will be dismissed for lack of jurisdiction only when, after all

reasonable inferences are construed in favor of the plaintiff, the plaintiff *cannot* establish subject

matter jurisdiction. Upon reading the USA's motion, however, it is clear that the USA has

afforded JPR no reasonable inferences in their favor. In fact, all the inferences made by the USA

are made solely in favor of the USA which is an incorrect standard for a 12(b)(1) motion to

dismiss. *See* Def.'s Mot. Pgs. 14 – 16. JPR's complaint can, and does, establish the court's

subject matter jurisdiction over these claims.

### i. The Intentional Circumvention of Sales

The first allegation addressed by the USA's Motion to Dismiss is the factual

circumstances surrounding JPR's claims. JPR's complaint clearly alleges the United States Fish

& Wildlife Service ("USFWS") *induced* JPR to record a conservation easement on Silverado

Ranch in exchange for mitigation credits which JPR could sell to entities seeking to develop

property in Riverside County and that USFWS would "encourage and facilitate" sales. Compl.¶¶

15-16, 43-44. The language representing the inducement is actually found in the Conservation

Banking Agreement. Compl. ¶ 42i, **Exhibit A.** Section 10 of the Conservation Banking

Agreement memorialized the acts USFWS promised to perform to "encourage and facilitate"

sales as alleged. Compl. ¶¶ 43-44. These included (1) confirming to prospective credit

purchasers that credits were available for sale from Silverado; (2) acknowledging that the

agreement remains in full force and effect; and (3) acknowledging that Silverado would be "approved" by USFWS and that USFWS would include Silverado on any list of Conservation Banks made available to prospective purchasers. Compl. ¶ 42i.

Using all reasonable inferences in favor of JPR, it does not require a substantial leap that these claims had not accrued before late 2006, and certainly not established "with near certainty" as the USA claims. JPR originally learned of sales going to other Conservation Banks sometime in 2002 or 2003. However, at that time JPR investigated those sales and specifically went to the USFWS requesting an explanation for those sales going elsewhere. USFWS explained that the sales were directed elsewhere for "biological reasons". USFWS's explanation seemed perfectly reasonable – there were other Conservation Banks and numerous other kinds of credits besides SKR and QCB credits in Western Riverside County. It was only years later, in 2007 and 2008, that JPR began to suspect that sales had been, and were continuing to be, directed to other Conservation Banks.

Also, the standard for which JPR's claim for circumvented sales should not be judged by a mere breach of contract fixed at a single point with a single injury; but instead <u>each</u> circumvented sale must be viewed as a distinct and separate breach of the Conservation Bank Agreement since each prospective sale is a separate and distinct transaction comprised of different developers in need of mitigation, different number and type of credits, different projects and project specific requirements. For example, it would be impossible for Plaintiff to file suit say in 2003 to recover circumvented sales that had not yet come to fruition and only did so in the future.  Each circumvented sale must be analyze separately for its particular point in time, its specific damage amount, etc . . . and Plaintiff has a viable claim with respect to any and sales that were circumvented within the applicable statute of limitation.  Thus, USFWS's breach would be, "an ongoing breach of the continuing duty [creating] a series of individual actionable

wrongs." *Mitchell v. United States*, 10 Ct. Cl. 787, 788-89 (Cl. Ct. 1986). The Federal Circuit has

held that, "[i]n order for the continuing claim doctrine to apply, the plaintiff's claim must be

inherently susceptible to being broken down into a series of independent and distinct events or

wrongs, each having its own associated damages." *Brown Park Estates-Fairfield Dev. Co. v.*

*United States*, 127 F.3d 1449, 1458 (Fed. Cir. 1997) (citing *Atkiebolaget Bofors v. United States*,

139 Ct. Cl. 642 (1957) (holding each individual sale of an anti-aircraft gun in violation of a

licensing agreement fell within the continuing claim doctrine).

JPR's claim regarding circumvented sales falls directly within the continuing claim

doctrine as stated by the Federal Circuit in *Brown Park*. First, each sale that the USFWS

oversees that could have gone to JPR is in effect being circumvented away by JPR by the

USFWS not allowing JPR's credits to be available for sale. By the terms of both the

Conservation Bank Agreement and the MSHCP, the USFWS has to *approve* any sale of

mitigation credits under either scheme. As a result, each approval and sale is a distinct, traceable

event of circumvention. Moreover, each circumvented sale will have an accounting available to

provide an *exact* amount that the associated credits were sold for – meaning each circumvented

sale has its own unique damages. In fact credits are continuing to be provided to private

landowners under the Endangered Species Act within Western Riverside as new species are

listed as endangered. *See* 79 FR 48547, 48574-75 (2014) (designating new critical habitat). Thus,

JPR's claim for circumvented sales is well within the six year statute of limitations and this court

has jurisdiction to hear these claims.

Plaintiff has a viable cause of action and is entitled to conduct discovery on any and all

sales that were circumvented and potentially recover damages on those circumvented sales

falling within the applicable statute of limitation.

### ii.   USFWS Failure to Recognize JPR's Bank Status or Revocation of JPR's Bank Status

From the beginning of JPR's interactions with the USFWS, starting with the recordation of the conservation easement in 1999, the USFWS recognized JPR as an approved mitigation bank. **Exhibits A, I, & H.** Indeed, the USFWS represented as such in multiple reports published in the Federal Register. *See* 66 FR 9476, 9483 (2001); 67 FR 18356, 18365 (2002). The credit dispute over the accounting cited to in Defendant's Motion to Dismiss did not even occur until December of 2008 when, for the first time, Plaintiff was notified that the County (and USFWS) were now claiming that 210 credits conveyed to the County in the 2003 transaction. **Exhibit G.** Plaintiff could not have been aware that there was a dispute over the 210 credits until the County and USFWS informed Plaintiff for the first time in 2008.  Moreover, the Defendant concedes in its Motion to Dismiss that JPR's status has remained in "doubt". Def.'s Mot., Pg. 10. Using Defendant's own perception of the situation, "doubt" cannot be construed against Plaintiff as the *certain* breach as the Defendant is representing.

Part of the "confusion" cited to for the first time in 2008 was in part due to the 2003 sale of property within the Silverado Ranch Mitigation Bank taking place prior to the finalization and approval of the MSHCP with Riverside County. Riverside County was directly handling land acquisitions prior to the adoption of the MSHCP. After the MSHCP's adoption on June 17, 2003, Riverside County created a new entity to oversee Riverside's land acquisition obligation under the MSHCP. This new agency was the Riverside Conservation Authority ("RCA").  The RCA was not a party to the 2003 land sale from Silverado Ranch Mitigation Bank to the County.

The RCA, USFWS and JPR spent years negotiating the terms of JPR's participation within the "in lieu fee program" setup by the MSHCP. At no point during these negotiations did the USFWS disavow JPR's status as a properly formed mitigation bank nor was it called into question by any of the parties involved. It was only in late 2008 that the "dispute" over the credits emerged. In 2008 the RCA and JPR took opposing positions as to whether 210 credits

transferred with the land or whether credits had previously been sold from the land. [Declaration of Gregory S. Reden, ¶31].

Eventually, in December 2008, the USFWS drafted an opinion letter accepting RCA's view of the credit dispute, disregarding JPR's previous accounting of JPR's credit sales – sales USFWS approved of and monitored. **Exhibit G**. This was the first instance of USFWS questioning JPR's Silverado Ranch Mitigation Bank status. Additionally, the USFWS later issued another opinion, providing JPR and the RCA an opinion that Silverado Ranch Mitigation Bank was a properly formed mitigation bank. **Exhibit H**. The Federal Register also reflects this view. 75 FR 51204, 51214 (2010). Clearly the USFWS failure to correctly recognize Silverado Ranch Mitigation Bank's remaining credits occurred for the first time in December 2008, well within the six year statute of limitations and as recent as 2011 USFWS acknowledged to Silverado Ranch Mitigation Bank that it is a mitigation bank entitled to participate in the MSHCP in lieu fee program. Thus, this court has jurisdiction to hear this claim as it is timely.

### iii.   JPR's Inverse Condemnation Claims

JPR asserts a claim for Inverse Condemnation in the alternative to the contract claim. Since JPR's inverse condemnation claim flows from the same set of facts as the claim for failure to recognize or revocation of Silverado Ranch Mitigation Bank's status, JPR's inverse condemnation claim did not accrue until December 2008.  As stated above, it was only in 2008 that USFWS first took the position that 210 of Silverado Ranch Mitigation Bank's credits transferred to the County and it acknowledged its entitlement to participate in the MSHCP as recent as 2011. Therefore the claim is within the six year statute of limitations..

The USA's Motion to Dismiss for Lack of Jurisdiction must be denied. In the alternative, JPR should be afforded the opportunity to amend their complaint under RCFC 15 since, given the evidence provided, the amendment would not be futile.

**II.   JPR's Complaint Successfully States a Claim Upon Which Relief May Be Granted**

Dismissal pursuant to RCFC 12(b)(6) is appropriate only when the facts asserted by the claimant do not entitle him to a legal remedy. *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed. Cir. 2002). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all factual allegations in the complaint, and … indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). In order to survive a motion to dismiss the court does not require "heightened pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need only allege enough facts to raise a reasonable expectation that *discovery* will reveal evidence to support the claims. *Id.* at 556.

**a.   JPR Successfully Alleges Facts to Raise a Reasonable Expectation that Discovery will Produce Evidence to Support a Breach of Contract**

It is well settled that to recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach. *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). A breach of contract *claim* requires: (1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty. *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir 2014) (emphasis added). A contract must be construed as a whole and in a manner that gives meaning to all of its provisions and makes sense. *Id.* When viewing the Conservation Banking Agreement as a whole it is clear that JPR has pled facts sufficient to state a claim for breach of contract and a reasonable expectation exists that JPR will discover further evidence to support its claims and indeed should be given a fair and equitable opportunity to do so.

### i.  JPR Sufficiently Pled Cognizable Breach of Contract Claims

The allegations related to the USFWS circumvention of sales and their inducements found in the contract in Section 10, subsections (a), (c), and (d) sufficiently plead a cognizable claim for a breach of contract. It is well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal claims. *Awad v. United States*, 301 F.3d 1367, 1372 (2002) (citing *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992) (upholding a transfer of the plaintiff's claims from the district court to the United States Claims Court on the ground that negligence and conversion claims could not establish a cause of action in torn independent of the underlying contractual relationship); *Blanchard v. St. Paul Fire and Marine Ins. Co.,* 341 F.2d 251 (5th Cir. 1965) (holding that plaintiff's claim against the United States for negligence was not a tort claim within the FTCA where it was founded upon an alleged failure to perform explicit or implicit contractual obligations); *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963) (holding that a developer's claim for breach of fiduciary duty was actually a contract action properly brought in the Court of Claims).

This Court has repeatedly asserted jurisdiction over claims based on 'tortious breach' of a government contract. *Summit Contractors, Inc. v. United States*, 22 Cl. Ct. 54, 56 (1990). The relevant inquiry is whether there is a nexus between the alleged tortious conduct and some alleged contractual obligation. *See Joseph W. Morris v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992). If an action arises "primarily from a contractual undertaking,' jurisdiction lies in the [Court of Federal Claims] 'regardless of the fact that the loss resulted from the [tortious conduct] in which defendant performed its contract.'" *Wood*, 961 F.2d at 198 (quoting *San Carlos*, 877 F.2d at 960).

Regarding claims for misrepresentation in the inducement, the United States Court of Federal Claims has observed that, "[w]e have frequently allowed recovery to claimants alleging that they entered into a contract in reliance on government misrepresentations at its preaward state." *Kenney Orthopedic, LLC v. United States*, 103 Fed. Cl. 455, 462 (Fed. Cl. 2012) (citing *Gregory Lumber Co. v. United States*, 9 Cl. Ct. 503, 526 (1986) (holding that, if the cause of action itself does not solely sound in tort, then "[f]or purposes of our analysis… a tortious breach of contract styled as a misrepresentation in the *inducement* (before the contract is formally signed) does *not* fall outside of this court's Tucker Act jurisdiction").

As alleged, USFWS represented to JPR that the USFWS would "encourage and facilitate" sales of JPR's conservation credits. Compl. ¶¶14-16, 43-44. These representations are found within the contract in Section 10, subsections (a), (c), and (d). Thus, any misrepresentation in the inducement stems from provisions found within the contract eventually signed and is claim for 'tortious breach' and not a claim sounding solely in tort as the USA states.

Furthermore, the USFWS breached the Conservation Banking Agreement by circumventing sales to other mitigation banks. By promising to confirm JPR's right to sell Silverado Ranch credits, acknowledging the Conservation Banking Agreement, and placing Silverado Ranch on a list for prospective purchasers; USFWS represented that Silverado Ranch conservation credits would be made available to prospective purchasers. JPR alleges that the USFWS diverted sales customers away from Silverado Ranch. Compl. ¶17. Clearly, diverting customers away from JPR's Silverado Ranch credits is no different from making JPR's Silverado Ranch credits unavailable. They are the same essential act with the same result – lost sales.

Additionally, the improper accounting by USFWS of Silverado Ranch's 210 mitigation credits and giving those credits to the County in 2008, and its refusal to allow Silverado to participate in the MSHCP breached Section 10, subsections (a), (c), and (d) of the banking

agreement. This is a clear breach of contract claim in that JPR alleges that they have fully complied with the banking agreement, Compl. ¶47, and that the USFWS failed to or refused to recognize JPR's Silverado Ranch as a valid mitigation bank and inappropriately took its 210 credits and gave them to the County. The USA attempts to paint the picture that USFWS refusal to recognize Silverado Ranch's status within the MSHCP in lieu fee program was due to accounting irregularities of JPR. The USA relies solely on a fact in dispute between the RCA and JPR. This is not the proper standard for a 12(b)(6) motion to dismiss. If this Court decides that it is going to consider an outside fact, let alone the disputed nature of it, then the Court must convert the 12(b)(6) to one for summary judgment and allow JPR to conduct discovery.

The USA's contention that a factual dispute between the RCA and JPR somehow constitutes a breach of the Conversation Banking Agreement is unfounded. Nowhere in the contract is there an obligation that JPR has not fully complied with. JPR provided the USFWS a complete and accurate accounting. JPR even provided the RCA's predecessor of the same accounting *prior* to the sale in 2003. [Declaration of Gregory S. Reden, ¶32].  However, in 2008 the USFWS completely ignored JPR's accounting and instead sided with RCA's opinion solely on RCA's undocumented allegations. **Exhibit G.** Again, this line of argument that the USA is advancing is completely inappropriate for a motion to dismiss.

Lastly, the USA's suggestion that JPR's phase 2 and 3 credits are unavailable to be claimed as damages misinterprets the contract language and the language of the conservation easement. Section 1 (b) specifically grants JPR, "[e]ach phased segment of the Conservation Bank *shall* be deemed established when the Property Owner records a conservation easement covering that Conservation Bank phase…" USA Ex 1 to Mot. To Dis. §1(b) (emphasis added); **Exhibit A**.  In essence, the moment JPR records a conservation easement on phases 2 and 3 JPR is entitled to the credits found Section 4. There is no deadline or other requirements of JPR.

**Exhibit A**.  Regardless, as explained below, without recordation of a conservation easement, Phases 2 and 3 are inversely condemned through the provisions of the MSHCP. Either way, the USA's assertion is unavailing.

JPR has successfully pled a cause of action for breach of contract. All of JPR's claims are intimately connected and indivisible from the Conservation Banking Agreement which JPR has alleged that USFWS breached. Therefore, the USA's motion to dismiss must be denied. However, should the court see a reason to grant the USA's motion to dismiss, JPR should be afforded the opportunity to amend their complaint to clarify any ambiguity in the factual allegations

### b.   JPR's Inverse Condemnation Must Survive the Motion to Dismiss

As a preliminary matter, the USA's contention that *alleging* both a breach of contract claim and a claim under the Takings Clause is expressly prohibited is decidedly incorrect. *See Stockton East Water District v. United States*, 583 F.3d 1344, 1368 (Fed. Cir. 2009); *RCFC 8(d)(3)*. It is true that there is language in earlier cases from the Federal Circuit to the effect that "[i]n general, takings claims do not arise under a government contract … because the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract." *Id.* (citing *St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008)). However, it cannot be understood as precluding a party from *alleging* in the same complaint two alternative theories for recovery against the Government. *Id.* The *Stockton* Court states, in discussing *Sun Oil Co. v. United States*, 215 Ct. Cl. 716 (1978), "[i]t is well established, as these cases explain, that a party can obtain only one recovery for a single harm regardless of how many legal theories there may be for a recovery." *Stockton* 583 F.3d at 1369. *Sun Oil* and its progeny clearly stand only for the proposition that a party cannot

recover multiple times for a single harm, not that alleging multiple or inconsistent theories is expressly prohibited.

In deciding a takings claim, the court must first consider "the nature of the interest allegedly taken to determine whether a compensable property interest exists." *Mehaffy v. United States*, 102 Fed. Cl. 755, 762 (2012). Property is not simply a physical object but includes a group of rights including right to possess, use and dispose of it. *Id.* The second prong of a takings inquiry determines whether the Government's action constitutes a compensable taking of that interest for a public purpose. *Id.* at 763.

JPR properly pled an inverse condemnation claim. JPR has a valid property interest. Compl. ¶7. JPR has further pled that USFWS through ESA regulations took the highest and best use of the land from JPR for the purpose of protecting endangered species – preservation of the ecosystem is clearly a public interest. Also, JPR received *some* compensation which has now been rendered valueless by USFWS actions. Compl. ¶¶14-19, 30-31, 59-61.

The conservation credits JPR did receive from the USFWS have been effectively rendered valueless by the USFWS refusal to recognize Silverado Ranch as a mitigation bank and its refusal to allow it to participate in the MSHCP In Lieu Fee Program.  Additionally, USFWS inversely condemned the 210 credits that USFWS improperly took from Plaintiff and gave to the County The USA's contention that these credits are valuable compensation is absurd. The "no evaluation" language referred to by the USA's motion as allowing JPR to sell their credits without any approval or oversight by USFWS is an incorrect reading of the language. The language refers to the necessary Environmental Impact Reports required under the Endangered Species Act to receive an incidental take permit when alienating or developing land found to be a habitat of endangered species. In fact, Section 2, subsection (b)(i) states that, "[u]ntil a NCCP/HCP is approved by the Wildlife Agencies…shall…on a project-by-project

basis…approve the use of the Conservation Bank for a particular project…" USA Mot. To Dis. Ex. A, §2(b)(i). In effect, the USFWS has to approve each project and sale and determine for USFWS the proper number of credits for a particular mitigation.

Additionally, it is important to review the recorded conservation easement, as its terms are far more restrictive of what JPR can do with the land than what is mentioned in the Conservation Banking Agreement and the conservation easement incorporates the Conservation Banking Agreement by reference thereto. *See* Def's Mot. Ex. 2, Pg 33. In the section 3 "Prohibited Uses", the conservation easement produces a litany of prohibited uses, including but not limited to:

> …(d) surface exploration or extraction of minerals; (e) erecting any building, billboard, or sign;… (I) otherwise altering the general topography of the Property, including building of roads;… (j) Except with *written approval* of the Grantee … constructing or engaging in any development activities…*Id.*

The conservation easement goes on to include these restrictions to Phase II and III lands as well, *even without* a conservation easement recorded on those sections. *Id.* Pg. 34, §4(c). "Grantor shall, as to the entire Bank, regardless of whether this Easement has been recorded on the segment of the Property, maintain the biological values of the lands…" *Id.* The easement continues, "…until such time as it is determined that the subject phase will not be incorporated within the Conservation Bank." *Id.* The last statement shows that the conservation easement gave JPR an irrevocable option to include the lands inside the bank and undeniably created a restrictive covenant against JPR on its Phase II and III property.

Moreover, due to the MSHCP's finalization and adoption by USFWS and other agencies, JPR cannot freely develop or alienate JPR's property. Any restrictions on the land created by USFWS did not exist at the time JPR acquired rights to the land in question. With the

implementation of the Agreement and the MSHCP, JPR effectively was given either credits JPR

cannot sell or retained ownership in land they cannot develop. As a result of the foregoing, JPR

has pled an actionable takings claim. However, in the event that the Court decides to grant the

United States Motion to Dismiss, JPR requests that leave to amend under RCFC 15 be provided

as the facts presented provide that amendment will not be futile.

### III.    JPR is Barred from Joining the CDFW as a Party to This Action

The Eleventh Amendment of the Constitution provides:

[t]he Judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign State.

It has long been settled that the reference to actions "against one of the United States"

encompasses not only actions in which a State is actually named as the defendant, but also

certain actions against state agents and state instrumentalities. *Regents of the Univ. of California

v. Doe*, 519 U.S. 425, 428 (1997). As an instrumentality of the State of California, any money

judgment against the CDFW would necessarily be a judgment satisfied by the State of

California.[1] The impetus of Eleventh Amendment immunity is the prevention of Federal-court

judgments that must be paid out of a State's treasury. *Hess v. Port Authority Trans-Hudson

Corp.*, 513 U.S. 30, 48 (1994). Therefore, the CDFW cannot be added as a party to this Action

due to the Eleventh Amendment.

The complaint should not be dismissed for the non-joinder of the California state agency.

Specifically, RCFC 19(b) analysis asks whether "in equity and good conscience the action

should proceed among the parties before it, or should be dismissed, the absent party thus

---

[1] CDFW is a department within California's Natural Resources Agency, that agency receives all
of its funding from the State of California. *See* http://www.ebudget.ca.gov/2014-
15/pdf/BudgetSummary/NaturalResources.pdf.

indispensable." RCFC 19(b). The decision is to be made in light of pragmatic considerations. Fed. R. Civ. P. Advisory Comm. notes (1966). The practical effect of dismissal of JPR's suit against the United States is that JPR is completely foreclosed from any form of recovery from the United States for the United States' alleged wrongdoing.

The list of factors that Rule 19(b) provides for the court to consider: (1)extent to which a judgment rendered in the absence of the person at issue might prejudice that person or the existing parties; (2) the extent to which the court can take action to lessen or avoid any prejudice; (3) whether a judgment rendered in the person's absence would be adequate for the parties before the court; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. RCFC 19(b).

The equities clearly do not favor dismissal. A judgment against the United States for the wrongdoing of the USFWS will have little to no prejudice upon the CDFW. The Court can take measures to limit any potential prejudice – for instance, should the California case grant JPR any recovery from the State of California and Riverside County, then this Court can reduce the amount of recovery sought by JPR in this case. Any judgment rendered without the CDFW would be adequate for the parties before the court because JPR seeks compensation for acts and conduct of the United States through the USFWS. Lastly, JPR would have no adequate remedy for any wrongdoing of the United States should this case be dismissed. The United States cannot be joined in the California case. The CDFW cannot be joined to this case. Practically speaking, the United States would be effectively immune when statute and the Fifth Amendment provide otherwise. Thus, the equities weigh in favor of this Court not dismissing the complaint for nonjoinder.

Moreover, the Defendant's concern over the County credit dispute is a classic red herring. The USFWS in 2008 admitted that there were hundreds of credits that were *undisputed*.

These undisputed credits are currently valueless due to acts of the USFWS and lie at the core of JPR's claim against the United States. While the 210 disputed credits are still claimed, the undisputed credits are certainly within this Court's jurisdiction and do not involve the County or California governments.

A mandatory stay is also unnecessary and impractical. The California case that the United States complains of is nearing its trial date. Surely any potential ambiguity will likely be cured long before this case will be ready for summary judgment, much less trial. Discovery can and should be conducted. Any discovery dispute that arises would likely be a discovery that would arise regardless of what occurs in the California case. The Court's precious resources will not be wasted by allowing discovery, and the case in general, to move forward.

## CONCLUSION

Plaintiff respectfully requests this honorable court deny Defendant's motion and find that this Court has subject matter jurisdiction to hear JPR's claims because JPR's claims were brought within six years of accrual of the causes of action. JPR states a claim upon which relief may be granted.  A stay is not necessary as the California case involves separate and distinct issues and is nearing trial and any duplicate issues will be settled prior to this case being ready for trial.  Discovery should be allowed to progress as little of the Court's resources will be expended.

In the alternative to granting the Defendant's motion to dismiss, JPR respectfully requests the opportunity to amend the complaint pursuant to RCFC 15 to cure any deficiencies in factual allegations as determined by the Court.

Dated:  November 14, 2014                       Respectfully submitted,

/s/ Justin G. Reden, Esq.
_____
Justin G. Reden, Esq.

**REDEN & REDEN,** APC
16885 Via Del Campo Court, Suite 320
San Diego, CA 92127
Telephone: (619) 758-3869
Facsimile: (800) 746-5015
Email: *jreden@redenandreden.com*
**Attorney for Plaintiff,**
**JPR, INC., a California corporation doing**
**business as SILVERADO RANCH**
**ESTATES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 14th day of November, 2014, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFEDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

<u>/s/ Justin G. Reden</u>